#### IN THE UNITED STATES DISTRICT COURT

#### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                      CRIMINAL NO. 02-2283 JB

WAYLON SANCHEZ,

        Defendant.

#### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion in Limine to Exclude the Statements of Paula Padilla Pursuant to Federal Rules of Evidence 804(b)(3) (Doc. 92). The issue is whether the Court should exclude the statements of Paula Padilla ("Padilla") that are offered exculpate the Defendant, Waylon Sanchez ("Sanchez"), from the crimes with which he is charged. Because the Court concludes that Sanchez has not established that corroborating circumstances clearly indicate the trustworthiness of the statements, the Court will grant the motion and exclude Padilla's affidavit and letter to Sanchez pursuant to rule 804(b)(3).

#### BACKGROUND

On December 10, 2002, the Grand Jury indicted Sanchez, charging him with Assault Resulting in Serious Bodily Injury, and Assault with a Dangerous Weapon in violation of 18 U.S.C. §§ 113(a)(6), 113(a)(3), and 1153. These crimes allegedly occurred within the Pueblo of Isleta on November 2, 2002. On November 19, 2002, during an interview with Special Agents from the Bureau of Indian Affairs ("BIA") and the Federal Bureau of Investigation ("FBI"), Sanchez confessed to committing these acts against the victim. On March 12, 2003, Sanchez, through his attorney, sent

a letter and an affidavit from Padilla, the victim's mother, to the United States. In this letter and affidavit from Padilla, there are statements that inculpate Padilla and exculpate Sanchez.[1]

In a cover letter attached to the affidavit and letter, Sanchez requested that the Government "re-evaluate [the] decision to prosecute [the Defendant]." On March 28, 2003, the United States filed a motion requesting the Court to appoint an attorney to represent Padilla (Doc. 44). The Court granted that motion and appointed James E. Bierly to represent Padilla (Doc. 50).

On September 30, 2003, Mr. Bierly first met with Padilla and provided her with legal advice. On October 1, 2003, after consulting with her attorney, Padilla decided to invoke her right to remain silent under the Fifth Amendment of the United States Constitution. This invocation of her Fifth Amendment right has made Padilla "unavailable" as a witness, as defined by the Federal Rules of Evidence.

## LEGAL AUTHORITIES AND ANALYSIS

According to rule 804(b)(3), a defendant may seek to admit certain hearsay evidence otherwise inadmissible to exculpate himself. That statement, however, must be:

---

[1] At the hearing on this motion, the Court stated that the statements were not inculpatory within the definition of rule 804(b)(3). See United States v. Bumpass, 60 F.3d 1099, 1102 (4th Cir. 1995) ("[T]he statement is genuinely adverse to declarant's penal interest . . . ."). The Court has reviewed those statements again in preparing this opinion and order, and no longer relies upon that ground as a basis for excluding the statements. See id. ("A statement made to the police admitting involvement in a criminal act . . . is adverse because of the potential for criminal liability.") (citing United States v. MacDonald, 688 F.2d 224 (4th Cir. 1982), cert. denied, 459 U.S. 1103 (1983)). While Padilla disclaims any intent to harm the victim, and contends the injuries were an accident, given the nature of the injuries and the possible charges that could be brought against her, the Court is no longer confident that the statements are not inculpatory and will no longer exclude the statements on that basis. For purposes of this motion, the Court will assume that the statements are inculpatory within the definition of 804(b)(3). The Court further notes that neither the Government nor Sanchez has suggested that the statements are not exculpatory of Sanchez.

> at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Fed. R. Evid. 804(b)(3).

Case law has recognized that rule 804(b)(3) requires the proponent of the hearsay evidence to satisfy a three-prong test. The three prongs are: (i) an unavailable declarant; (ii) the statement made by the unavailable declarant must be against the declarant's penal interest; and (iii) sufficient corroboration to indicate the trustworthiness of the statement. See United States v. Porter, 881 F.2d 878, 882 (10th Cir. 1989), cert. denied, 493 U.S. 944 (1989). "The party offering the statement bears the 'formidable burden' of meeting the requirements of Rule 804(b)(3), and the court's decision on its admissibility is reviewed for abuse of discretion." United States v. Bumpass, 60 F.3d at 1102 (quoting United States v. MacDonald, 688 F.2d at 233).

According to rule 804(a)(1), an "unavailable" witness includes a person who the Court exempts on the grounds that he or she has asserted a privilege. As indicated earlier, the Court will assume that Padilla's statements are against her penal interest within the meaning of rule 804(b)(3). At a minimum, Padilla has implicated herself to some degree in the alleged crimes against her child with which the Grand Jury has charged Sanchez. Based on Mr. Bierly's representations on behalf of Padilla, the witness has asserted a privilege and is therefore unavailable to be cross examined at trial.

Having found that the statements are against Padilla's interest, the Court must look at the third prong of the test, namely, whether there is sufficient corroboration to indicate the trustworthiness of these statements. See United States v. Porter, 881 F.2d at 882. Determining the

sufficiency of corroboration of the hearsay statements is within the trial court's sound discretion. See United States v. Springs, 80 F.3d 1450, 1461 (10th Cir. 1996).

In United States v. Brainard, 690 F.2d 1117 (4th Cir. 1982), the court discussed the nature and purpose of the corroborating circumstances requirement in a case where the declarant's statement "went to the heart of the defense."

> The requirement of corroborating circumstances was designed to protect against the possibility that a statement would be fabricated to exculpate the accused. Thus, the Advisory Committee explained the requirement of corroborating circumstances as follows:
>
>> [O]ne senses in the decisions a distrust of evidence of confessions by third persons offered to exculpate the accused arising from suspicions of fabrication either of the fact of the making of the confession or in its contents, enhanced in either instance by the required unavailability of the declarant.
>
> F.R. Evid. 804(b)(3), Advisory Committee Notes.  The rule requires not a determination that the declarant is credible, but a finding that the circumstances clearly indicate that the statement was not fabricated. It is the statement rather than the declarant which must be trustworthy.

Id. at 1124. "[I]t must be remembered that admission of such hearsay leaves the party against whom it is offered without the important benefit of cross examination. The level of corroboration therefore must be sufficient that cross examination would add little to test the hearsay's reliability." United States v. Bumpass, 60 F.3d at 1102.

The courts have identified several factors which are relevant to determining whether sufficient corroboration exists to justify admitting a statement under the rule, including: (i) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement; (ii) the declarant's motive in making the statement and whether there was a reason for the declarant to lie; (iii) whether the declarant repeated the statement and did so

4

consistently; (iv) the party or parties to whom the statement was made; (v) the relationship of the declarant with the accused; and (vi) the nature and strength of independent evidence relevant to the conduct in question.  See, e.g., id.; United States v. Noel, 938 F.2d 685, 688 (6th Cir.1991); United States v. Slaughter, 891 F.2d 691, 698 (9th Cir.1989).

In United States v. Pohlman, 97 F.3d 1465 (10th Cir. 1996) (unpublished), the defendant sought to admit several hearsay statements alleged to have been made by Acosta, the defendant's boyfriend, as statements against penal interest pursuant to rule 804(b)(3).  The trial court, the Honorable Howard Bratton, Senior United States District Judge, refused to admit the evidence.  Defense counsel proffered that Acosta's mother would have testified that her son had told her that he was "responsible" for the marijuana and that he wanted to "turn himself in."  Defense counsel also proffered that the defendant's previous counsel would have testified that Acosta had been to his office on a number of past occasions to tell him that "it was my load . . . I want to turn myself in . . . can you set that up for me?"  Defense counsel proffered the testimony of three other witnesses who would have testified in a similar fashion.  See id. at *1.

The corroborating evidence offered here is considerably less than that proffered in Pohlman and does not clearly indicate the trustworthiness of the statements.  Moreover, the fact that Padilla is Sanchez' girlfriend is a troubling factor.  As the United States Court of Appeals for the Tenth Circuit stated in Pohlman: "The fact that Acosta was the boyfriend of Pohlman provides a reason to help her by fabricating a story that he was 'responsible' for the marijuana, especially if he could exonerate her without ever having to come to court to do it."  United States v. Pohlman, at * 3.  And there is no other witness, such as another child, who could testify as an eyewitness of the events.

Sanchez relies on six allegedly corroborating circumstances: (i) that Padilla came forward to Sanchez' counsel and gave the affidavit; (ii) Padilla wrote the letter to Sanchez; (iii) Padilla gave similar statements to the FBI and showed them around her home; (iv) she never recanted; (v) no threats were made to her; and (vi) Padilla's brother, Christopher Padilla, made statements to a BIA Special Agent about his sister's statements and temper.

The first two, the statements themselves, are not corroborating circumstances, but the evidence in need of corroboration. Moreover, additional evidence of the unreliability of Padilla's statements is in the content of the statements themselves. The statements are inconsistent with the extent of the physical injuries to her child. And while the statements may be inculpatory, the fact that Padilla contends the burns were an accident – not intentional – is at tension with the statements, questions, and conclusions of her brother which Sanchez presents as a corroborating circumstance. Her own brother did not believe it was an accident, but rather was intentional. The Court is hard pressed to find her statements are trustworthy when Sanchez own evidence suggests otherwise. Moreover, at least one of Padilla's statements was made in Sanchez' attorney's office, was reduced to writing in that office, and notarized by the staff of the Federal Public Defender's office. The statements, on their face, do not clearly indicate their trustworthiness.

While there is some consistency between Padilla's statements in the affidavit and the letter to Sanchez with the statements given during the FBI interview, the timing -- coming so long after the arrest and Sanchez' confession -- is troubling. And while Padilla has not recanted her statements, the fact that they came so late in the process does not show the consistency in her position that would clearly indicate trustworthiness. Finally, while Sanchez says there is no evidence of threats, this is one of those categories of evidence that may be difficult to prove either way; if threats were made,

6

the United States and the Court might not be aware of them. The absence of evidence of threats is not the clear indication of trustworthiness that the Court needs to be assured Padilla's statements are trustworthy.

The statements of Christopher Padilla to a BIA Special Agent raise more questions of trustworthiness than provide answers. In was in January, 2003 – well after the burns and Sanchez' confession occurred in November, 2002 – that Padilla indicated that "she is the reason why Waylon is in prison" and that "she may have accidentally burned the victim." Christopher stated that Padilla said she "was holding the curling iron down beside her and accidently touched" the victim. When Christopher confronted Padilla later about how, if it was an accident, "the burns [were] so perfect," Padilla got mad and left without answering the question. That is a question that troubles the Court, too. And if the Court allowed these statements into evidence, and Padilla were not available at trial, the jury would be deprived of the opportunity to hear the answer to this question. Christopher also indicated that he wanted Padilla to move in with him and his mother "so she could get some help." Christopher stated that Padilla would rather go to see Waylon than come see her son. While Christopher's interview statements may appear helpful to Sanchez – in that they tend to exculpate him by expressing the concern that Padilla may have <u>intentionally</u> caused harm to the victim – those statements actually undercut the trustworthiness of Padilla's statements in her letter and affidavit that the injuries were <u>accidentally</u> caused.

While the Court considered first only Sanchez' proffers regarding the statements to decide that they did not clearly indicate trustworthiness, when the Court turns to the circumstances that the Government offers, the Court is even more concerned about the trustworthiness of the statements. A considerable amount of evidence suggests that Padilla's statements – rather than be clearly

7

trustworthy – may be false and the product of Sanchez' undue influence on the out-of-court declarant, who is now unavailable to be cross-examined. This possibility renders the exculpatory hearsay inadmissible.

First, the Government has tendered a telephone bill for Padilla's mother, Juana Padilla, which shows Padilla received 84 telephone calls from Sanchez between December 30, 2002 and January 24, 2003. She also allegedly made numerous visits to him while he was incarcerated. Again, this extensive dialogue between Sanchez and Padilla shortly before she made the statements in her affidavit and letter to Sanchez does not clearly indicate their trustworthiness and suggests otherwise.

Second, Dr. Katrina Terry's medical report of the victim is not consistent with Padilla's statements. While Sanchez argues that this evidence goes to the weight to be given to Padilla's statements and the jury should be given an opportunity to weigh that evidence, the Court must first determine whether Padilla's out of court statements are trustworthy enough to even come into Court. Dr. Terry's report does not give the Court a basis for concluding that Padilla's statements are trustworthy.

After making the statements, Padilla aligned herself with Sanchez' family and declined to speak with the United States. Her communications about her statements were with Sanchez, Sanchez' attorney, or Sanchez' investigators. Furthermore, when she finally agreed to be interviewed by government investigators on March 27, 2003, her explanation of the injuries was also inconsistent with the physical evidence concerning the injuries to the child. Also, Sanchez did confess to Special Agents from the BIA and FBI that he forced the victim to sit on the hot curling iron for one minute. Again, this confession undercuts the trustworthiness of Padilla's statements.

If the statements were allowed in, and Padilla were not available for cross examination, the Government would not have an opportunity to put these statements in the context needed. Statements admitted under rule 804(b)(3) should not need a lot of cross examination, yet these documents demand it. The Court asked the Government at the hearing on this motion to outline what that cross examination would look like if Padilla were available, and the extensiveness of that proffer suggests that these statements do not stand well on their own. Indeed, the fact that the Court has had to consider so much argument and proffers, and even the prospect of an evidentiary hearing before the trial, to determine this matter suggests that the circumstances here do not clearly indicate the trustworthiness of Padilla's statements.

**IT IS ORDERED** that the United States Motion In Limine to Exclude the Statements of Paula Padilla Pursuant to Federal Rules of Evidence 804(b)(3) is granted and the statements of Paula Padilla in her affidavit and letter to the Defendant, Waylon Sanchez, and the mention of those statements, will be excluded from the upcoming trial.

**UNITED STATES DISTRICT JUDGE**

Marron Lee, AUSA
Fred Smith, AUSA
U. S. Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the United States*

Margaret Katze, AFPD
Federal Public Defender
Albuquerque, New Mexico

   *Attorney for Defendant Waylon Sanchez*