**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                    CRIMINAL NO. 02-2283 JB

WAYLON SANCHEZ,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the United States' Motion in Limine for Daubert Ruling Regarding the Admissibility of Defendant's Proposed Expert Testimony (Doc. 78).  The primary issue is whether proposed expert testimony of Samuel Roll, Ph.D. ("Dr. Roll") would assist the jury in gathering information and making decisions about the Defendant, Waylon Sanchez ("Sanchez").  Because the Court does not believe Dr. Roll's testimony would assist the jury in its fact-finding role, and because the Court is concerned that his testimony could mislead the jury, the Court grants the United States' motion and excludes his testimony from the trial of this matter.

**BACKGROUND**

The United States filed this motion on September 11, 2003, requesting a hearing before trial regarding the admissibility of this proposed expert's testimony.  Sanchez provided the Court with Dr. Roll's curriculum vitae and two-page psychological report.  The Court reviewed these documents and then held a hearing on the motion.

At the hearing, counsel for both parties agreed that Dr. Roll is well-qualified in the fields of

1

both clinical and forensic psychology.  His credentials were not disputed.  The Court heard Dr. Roll testify about his proposed expert opinions and arguments from counsel about the admissibility of the proposed testimony.

The Court's review of Dr. Roll's psychological report does not indicate that he will be called as an expert to testify about insanity, mental disease or defect, or a mental condition that will bear on the issue of guilt.  At the hearing, Dr. Roll and defense counsel confirmed that this was not Dr. Roll's purpose.  Rather, Sanchez intends to call Dr. Roll to give his expert testimony on two different issues related to his findings during his evaluation and testing of Sanchez.  First, Dr. Roll proposes to testify that Sanchez possesses a number of personality features that are inconsistent with the crimes with which he is charged.  Second, Dr. Roll intends to testify that Sanchez' personality features are consistent with giving a false confession in an effort to help a loved one, namely his girlfriend, Paula Padilla.

In his report, Dr. Roll stated: "There is no way a psychological evaluation can determine the correct version of a previous course of events, disentangle varying accounts of complex, interpersonal interactions, determine responsibility, or predict future events."  Psychological Report at 1.  He also stated: "[T]he psychological evaluation cannot determine what actually happened."  Id. at 2.  At the hearing held on this motion, Dr. Roll confirmed the limits of his testimony.

## THE COURT'S GATE-KEEPING ROLE

The Daubert line of decisions requires the Court to determine whether Dr. Roll is proposing to testify to (i) scientific or other specialized knowledge that (ii) will assist the trier of fact to understand or determine a fact in issue.  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993).  This determination entails a preliminary assessment whether the reasoning or

2

methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.  See id. at 592-593.  Before allowing Dr. Roll to testify, the Court must be satisfied that his testimony is not only relevant, but reliable.  See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).  The Supreme Court has made clear that "where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"  Id. at 149 (quoting Daubert, 509 U.S. at 592).  To be reliable under Daubert, an expert's testimony must be based on scientific knowledge, which "implies a grounding in the methods and procedures of science," based on actual knowledge, not "subjective belief or unsupported speculation."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. at 590.  The proponent of the evidence must also show that the expert's opinion is sufficiently tied to the facts of the case to satisfy rule 702's relevancy requirements. See Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir. 1999).

Recently, the United States Court of Appeals for the Tenth Circuit applied the Daubert and Kumho tests in Dodge v. Cotter Corp., 348 F.3d 1212 (10th Cir. 2003), reiterating the four basic tests for the reliability and admissibility of expert opinion testimony as follows: (i) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (ii) whether the opinion has been subjected to peer review; (iii) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (iv) whether the theory has been accepted in the scientific community.  See id. at 1222 (quoting Daubert, 509 U.S. at 593-94).  This list is not intended to be an exclusive checklist.  See Kumho Tire Co. v. Carmichael, 526 U.S. at 150.  To the contrary, district courts applying Daubert

3

have broad discretion "in both deciding how to assess an expert's reliability, including what procedures to utilize in making that assessment, as well as in making the ultimate determination of reliability." United States v. Velarde, 214 F.3d 1204, 1208-1209 (10th Cir. 2000).

The Tenth Circuit, in Dodge v. Cotter, stated that the district court should generally focus on an expert's methodology rather than the conclusions it generates, but noted that an expert's conclusions are not immune from scrutiny. See Dodge v. Cotter, 328 F.3d at 1222. The Dodge v. Cotter opinion quotes with approval language from General Elec. Co. v. Joiner, 522 U.S. 136 (1997), to the effect that a court may conclude that there is simply too great an analytical gap between the data and opinion proffered, and that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Dodge v. Cotter, 328 F.3d at 1222 (quoting General Elec. Co. v. Joiner, 522 U.S. at 146).

> Under Daubert, any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology. It is critical that the district court determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. Regardless of the specific factors at issue, the purpose of the Daubert inquiry is always to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Dodge v. Cotter, 328 F.3d at 1222-1223 (internal quotation marks and citations omitted).

A recent Tenth Circuit decision gives this Court specific guidance in this case. In United States v. Adams, 271 F.3d 1236 (10th Cir. 2001), the Tenth Circuit, in an opinion written by the Honorable Paul J. Kelly, Jr., Circuit Judge, held that the district court was within its discretion in excluding an examining psychologist's report, offered to show the defendant's neurocognitive

4

impairment and dependent personality structure and to support the possibility that incriminating statements he gave to the police were false.  The Tenth Circuit stated that the district court may exclude expert testimony relating to the credibility of a confession on the ground that it encroaches upon the jury's vital and exclusive function to make credibility determinations and therefore does not assist the trier of fact as required by the rule governing testimony by experts.  See id. at 1245.  Judge Kelly grounded his decision on the fact that the opinion exceeded the scope of the expert's specialized knowledge and therefore merely informed the jury that it should reach a particular conclusion.  See id.  The court also stated that the testimony could be excluded on the ground that the testimony of impressively qualified experts on the credibility of other witnesses is prejudicial and unduly influences the jury.  See id. (citing F.R. Evid. 403).

The facts in United States v. Adams are, on one aspect of Dr. Roll's proposed testimony, similar to those in this case.  The defendant in that case asserted that his prior confession had been false and that he had lied to protect his girlfriend.  During the hearing on the motion in limine in United States v. Adams, defense counsel stated that he had asked the examining psychologist to "'look into whether or not [Mr. Adams's] personality, mental makeup, however you want to put it, would he be so inclined -- given the testing that's done, would there be a possibility that he would give a false statement to the police.'" Id. at 1241-1242.  The expert concluded that the defendant's low neurocognitive functioning and dependent personality structure

> strongly raise [] the possibility, given the conflicting explanations made by [the defendant] and others, that he was not telling the truth when he made incriminating statements to Wichita Police Officers and ATF agents.  His statements that he was 'protecting a girlfriend' when he confessed to possession of the firearm is consistent with his personality and cognitive state, and indicative of his difficulty making appropriate and reasoned choices.

5

Id. at 1246.  Judge Kelly stated that the district court was within its discretion in holding that the report was little more than a professionally trained witness testifying that, based upon his history, "'Mr. Adams is the type of person who would have lied about his involvement to the police.'"  Id.

On appeal, the defendant challenged the exclusion of the psychologist's report on the basis of its substance.  Just as in this case, there was no question about the voluntariness of the confessions. The defendant sought, as here, to introduce the psychological evidence to diminish the credibility of his earlier statements to the police.

The Tenth Circuit distinguished between precedent allowing expert testimony bearing on the credibility of prior testimony or confession, and precedent dealing with the voluntariness of a confession.  See id. at 1244.  Judge Kelly reminded that "'[t]he credibility of witnesses is generally not an appropriate subject for expert testimony.'"  Id. at 1245 (quoting United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993)).  The Tenth Circuit held that the question whether the defendant's previous confession was a lie to protect his girlfriend was precisely the type of explanation that a jury was capable of resolving without expert testimony.  See id. at 1246.

## LEGAL ANALYSIS

To lay a proper foundation for Dr. Roll's testimony, Sanchez must demonstrate to the Court that the expert's testimony is both relevant and reliable.  Because the Court finds that the proposed testimony does not meet either requirement, and furthermore may be unfairly prejudicial and  mislead the jury, it will exclude Dr. Roll from testifying at the trial of this matter.  Similarly, the Court will exclude the introduction of Dr. Roll's written report.

## Relevance and Probative Value

Sanchez has not convinced the Court that Dr. Roll's testimony will assist the jury or the Court

to gather information and make decisions about Sanchez.  Dr. Roll made clear that he will not be testifying about insanity, mental disease or defect, or a mental condition that will bear on the issue of guilt.  Dr. Roll also testified that there was no issue of mental illness or diminished intelligence. Sanchez knew what he was doing when he gave the confession, and the confession was voluntary.

Dr. Roll's report also states that he cannot predict whether Sanchez would or would not have done certain things.  No test can tell what Sanchez did.  There is no way a psychologist can determine whether a defendant's statements at any particular time were true or false.  While Dr. Roll stated that he could testify whether someone's personality type is consistent with anti-social behavior, he could not testify whether Sanchez in fact committed the crimes with which he is charged or falsely confessed to protect his girlfriend.

These limitations on what Dr. Roll could testify to raise questions about whether  Dr. Roll's testimony would be material and relevant to the facts in this case.  Dr. Roll will testify neither about Sanchez' mental condition nor the chance that he committed the crimes with which he is charged. Dr. Roll's testimony would instead be that the alleged crimes are inconsistent with Sanchez' personality and that his initial confession and subsequent retraction are consistent with his personality and his current love relationship.

The Court is not convinced such testimony would be material and relevant in this case, because none of the issues left to be determined at trial will require any evaluation of Sanchez' personality or tendencies.  The issue at trial is not whether Sanchez' history, psychological tests, and interviews with Dr. Roll are inconsistent with an anti-social personality.  The question for trial is whether Sanchez committed the acts with which he is charged.  And Sanchez has not persuaded the Court that Dr. Roll's report, or any evidence based upon that report, would be material and relevant

to any defense or other disclosed evidence in this case.  The Court will therefore exclude his testimony as being insufficiently related to the particular facts of this case.  Moreover, any probative value of Dr. Roll's proposed testimony is substantially outweighed by the danger of unfair prejudice and the invasion of the province of the jury in determining credibility.  Dr. Roll's testimony would lead to unnecessary confusion of the issues and would tend to mislead the jury.  Thus, rule 403 also requires the exclusion of Dr. Roll's written report and testimony regarding Sanchez.

**<u>Reliability</u>**

Sanchez also did not persuade the Court that Dr. Roll's report and testimony sufficiently indicate any appropriate scientific methodology that would enable him to testify about the ultimate conclusions he has reached concerning Sanchez' personality and whether such a person is capable of committing the crimes with which he is charged.  The conclusions contained in Dr. Roll's written report and testimony regarding Sanchez are outside the area of appropriate expert testimony under the rules of evidence, as defined by the tests set out in <u>Daubert</u>.  In other words, Sanchez did not persuade the Court that Dr. Roll's ultimate conclusions in this case are scientifically sound.  After conducting its gate-keeping review of the proposed testimony of Dr. Roll, the Court has determined that the proposed expert testimony is not admissible under rules 702, 703, and 704, and the testimony does not meet the requirements of the <u>Daubert</u> line of cases.

The Court would first note that the underlying methodology used by Dr. Roll in this case appears to be sound.  The psychological tests which he applied to Sanchez are widely recognized and used throughout the relevant community.  Sanchez has succeeded in convincing the Court of this point.  It is necessary, however, for Sanchez to demonstrate that the *conclusions* that Dr. Roll has derived from his evaluation and testing of Sanchez are themselves the result of a similarly scientific

methodology.  An expert cannot use sound scientific methodology to support unscientific and speculative conclusions.

After listening to Dr. Roll testify, the Court is concerned that there "is simply too great an analytical gap between the data and opinion proffered." Dodge v. Cotter, 328 F.3d at 1222.  While the basic methodology is susceptible to testing, and has been subjected to such testing, Sanchez did not persuade the Court that the ultimate opinions that Dr. Roll derived from the application of that methodology are susceptible to testing or that those opinions have in fact been subjected to such testing.  The Court has the same concern about peer review.  While the basic methodology has been subjected to peer review, Sanchez did not explain how Dr. Roll's interpretations of the data resulting from that methodology have been subjected to peer review.  Dr. Roll was able to indicate some error rate for the underlying methodology, but not for the overall interpretations that he derives from that methodology.  In other words, the Court is left without a known or potential rate of error associated with the methodology actually used here and without standards controlling the ultimate technique's -- not the basic testing's-- operation.  The failure rate for the entire method actually used here could be as high as 30%, and that disturbs the Court.  Dr. Roll could not state an error rate for his ultimate opinions.

Finally, Sanchez did not convince the Court that Dr. Roll's extrapolation from the results of the psychological tests has been accepted in the scientific community.  As noted earlier, the Court does not doubt that the tests themselves are widely accepted, but the Court was not convinced that a widespread segment of Dr. Roll's profession engages in the interpretations and opinions that he proffers in this case.  What the Court was looking for was evidence that test results, such as those obtained from Sanchez in this case, have been found to correlate with a likelihood to falsely confess.

The Court did not see that evidence.

Finally, while Dr Roll's report stated his conclusions in terms of Mr. Sanchez "personality," at the hearing, Dr. Roll stated that he would not be testifying about Sanchez' personality, but rather about Sanchez' "personality features."   This qualification, however, does not alleviate the Court's concerns with the proposed testimony.   The Court is concerned that people exhibit a variety of personality features, some of which would be consistent with criminal behavior and some of which would not.   To select only some personality features for review and not others seems to leave the interpretation without a firm anchor.   Even a person who would never hurt a child might display anger, a temper, or actions that could be considered "consistent" with personality features that would harm a child.   That analysis does not appear helpful in determining whether Sanchez committed the acts he is charged with in this case.

After reviewing the report and the proposed testimony of Dr. Roll and after a hearing to allow Sanchez to offer an adequate foundation for the proposed expert testimony, the Court has determined that Dr. Roll's proposed conclusions and opinions are not consistent with the <u>Daubert</u> line of cases setting forth the tests of admissibility for expert testimony.   <u>Daubert v. Merrel Dow Pharmaceuticals, Inc.</u>, 509 U.S. at 592.   The Court is concerned that the ultimate opinion, although offered by a genuinely qualified scientist, is speculative.   The Court is concerned that Dr. Roll's testimony would not be helpful to the jury and might actually mislead them.   Based on what Sanchez has provided the Court to qualify Dr. Roll to testify about his conclusions and opinions, and pursuant to the authorities cited above, the Court has exercised its special gate-keeping obligation and concludes that any testimony offered by Dr. Roll would be inadmissible pursuant to rule 702.

Furthermore, the Court reads <u>United States v. Adams</u> as precluding Dr. Roll from testifying

10

on the issue of Sanchez' allegedly false confession.  The Court does not see that the testimony on the personality features being inconsistent with the crime charged is materially different from that regarding the confession.  The Court reads the <u>Adams</u> decision as being equally skeptical of both.  This Tenth Circuit case precludes this Court from reaching the result that the court reached in <u>United States v. Raposo</u>, 1998 WL 879723 (S.D.N.Y., filed Dec. 16, 1998).  The Court believes that rule 403, which requires the Court to exclude evidence that would be unfairly prejudicial and would mislead the jury, and rule 702, regarding expert testimony, preclude this testimony.

**WHEREFORE, IT IS ORDERED,** that the United States' Motion in Limine for Daubert Ruling Regarding the Admissibility of Defendant's Proposed Expert Testimony is granted.  The Court will exclude Dr. Roll's psychological report and his findings, and preclude any testimony from Dr. Roll at trial.

_____
UNITED STATES DISTRICT JUDGE

David C. Iglesias, United States Attorney
Marron Lee, AUSA
Fred Smith, AUSA
U. S. Attorney's Office
Albuquerque, New Mexico

*Attorneys for the United States*

Margaret Katze, AFPD
Federal Public Defender
Albuquerque, New Mexico

*Attorney for Defendant Waylon Sanchez*